# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

ANGELA SUMMERS, )
)
   Plaintiff, )
)
v. )   CV420-271
)
LUIS CARASAS, )
)
   Defendant. )

## ORDER

Defendant Luis Carasas removed this personal-injury auto-wreck case from the State Court of Chatham County. *See generally* doc. 1 (Notice of Removal). He moves to exclude certain opinions of Plaintiff Angela Summers' radiology expert Dr. Sean Mahan (the "Mahan Motion"), doc. 37, the causation opinions of her treating physicians (the "Causation Motion"), doc. 38, and all testimony of her life care planning expert Robert Tremp (the "Tremp Motion"), doc. 39. Summers did not respond to the Mahan Motion. *See generally* docket. Summers responded in opposition to the Causation Motion, doc. 45, and Carasas replied, doc. 47. Summers responded in opposition to the Tremp Motion. Doc. 44. For the following reasons, the Mahan Motion is **GRANTED** as unopposed,

doc. 37, the Causation Motion is **DENIED**, doc. 38, and the Tremp

Motion is **DENIED**, doc. 39.

I.    *Carasas' motion to exclude opinions of Summers' expert Mahan*
      *is granted as unopposed.  Doc. 37.*

Summers identified Mahan as a retained[1] radiology expert in her

disclosures.  Doc. 47-5 at 2; *see also id.* at 5-11 (Mahan CV and report).

Mahan's report compares Summers' MRI taken before the collision with

her lumbar spine MRI taken after the collision.  Doc. 37-5 at 8-11.  At his

deposition, Mahan also offered opinions regarding Summers' cervical

spine MRI.  *See* doc. 37-6 at 6 (Mahan testified that he did not include

opinions regarding the cervical spine MRI in his report, but would "be

happy to give [his] opinions on it.").  Carasas asks the Court to exclude

Mahan's opinions regarding the cervical spine MRI pursuant to Fed. R.

Civ. P. 37(c)(1) because they were not included in his report.  Doc. 37 at

9.  Summers has not responded to the motion, *see generally* docket, and

it is **GRANTED** as unopposed.  Doc. 37.  To the extent Summers seeks

---

[1]  Summers purported to disclose Mahan "[i]n accordance with Rule 26(a)(2)(C)",
which governs disclosure requirements for experts not required to provide a written
report.  Doc. 37-5 at 2; *see* Fed. R. Civ. P. 26(a)(2)(C).  At his deposition, Mahan
clarified that he was "retained in [Summers'] case as an expert witness [and] not [as]
a treating physician."  Doc. 37-6 at 5.  Since Mahan was retained specifically to
provide expert testimony in this case, the disclosure requirements related to his
testimony are governed by Fed. R. Civ. P. 26(a)(2)(B).

to offer Mahan's testimony regarding the cervical spine MRI, that testimony is **EXCLUDED**.

II. *Carasas' motion to exclude the causation opinions of Summers'*
    *treating physicians is denied.  Doc. 38.*

Summers disclosed three of her treating physicians as expert witnesses.  Doc. 38-4 at 2-3.  The disclosure states that she:

> anticipates that the treating physicians . . . may provide testimony concerning the causal relationship of [her] injuries to the subject collision or testimony otherwise provided by Rules 702, 703, or 705 of the Federal Rules of Evidence.

*Id.*  Carasas argues that the Court should not permit them to testify about causation because they did not prepare expert witness reports. Doc. 38 at 1.  He also contends, in the alternative, that their causation testimony should be excluded because Summers did not sufficiently summarize the testimony in her disclosure.  *See, e.g.*, doc. 47 at 5.

The Federal Rules require a party seeking to introduce testimony by a "retained or specially employed" expert to disclose the identity of the expert and provide a report.  Fed. R. Civ. P. 26(a)(2)(A)-(B).  For certain witnesses not "specially employed" to testify, the Rule does not require a report, but merely disclosure of "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence

702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."  Fed. R. Civ. P. 26(a)(2)(C).

Generally, treating physicians are not required to submit expert reports under Rule 26(a)(2)(B).  *See In re Denture Cream Prod. Liab. Litig.*, 2012 WL 5199597, at *4 (S.D. Fla. Oct. 22, 2012) ("When a treating physician testifies regarding opinions 'formed and based upon observations made during the course of treatment,' the treating physician need not produce a Rule 26(a)(2)(B) report." (citation omitted)). "[T]reating physicians offering opinions beyond those arising from treatment," including causation opinions in some circumstances, "are experts from whom full Rule 26(A)(2)(B) reports are required."  *Id.* (citing *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011)).  Accordingly, if the treating physicians' causation opinions were "formed and based on observations made during the course of treatment, then no Subsection B report is required, . . . albeit [a] Subsection C report . . . will be required.  If, however, [their opinions were] based on facts gathered outside the course of treatment, . . . then a full subsection B report will be required."  *Kondragunta v. Ace Doran*

*Hauling & Rigging Co.*, 2013 WL 1189493, at *12 (N.D. Ga. Mar. 21, 2013) (citations omitted).

"If a party fails to provide information or identify a witness as required by [Rule 26(a)], the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (quoting *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006)).

It is impossible for the Court to determine whether the treating physicians' unspecified causation opinions were formed based on observations made during Summers' treatment because the record only indicates that they *may* testify about "the causal relationship of [Summers'] injuries to the subject collision."  Doc. 38-4 at 2-3; *see also* doc. 45 at 2 (Summers notes that Carasas has not deposed the treating physicians).  The Court, however, need not decide whether the treating physicians should have produced Rule 26(a)(2)(B) reports.   Even if

5

Summers was only required to supply Rule 26(a)(2)(C) disclosures, they are deficient.

Although the Eleventh Circuit has "not yet clarified what the minimum disclosure requirements of non-retained treating physicians are under Rule 26(a)(2)(C)," *Milton v. C.R. Bard, Inc.*, 2021 WL 67356, at *10 (M.D. Ga. Jan. 7, 2021), courts have held that a Rule 26(a)(2)(C) disclosure is inadequate "(1) if it merely repeats the exact same set of boilerplate language for a number of experts without giving nuance to the specificities on which each will opine, or (2) points to a large trove of facts and data with no list of subjects or summary in lieu of an official Rule 26(a)(2)(C) disclosure," *Andrews v. United States*, 2021 WL 7452225, at *8 (N.D. Fla. June 2, 2021) (citing *Jaworek v. Mohave Transportation Ins. Co.*, 2020 WL 3425116, at *2 (W.D. Wis. June 23, 2020)); *see also Brackett v. Nat'l Specialty Ins. Co.*, 2022 WL 2915659, at *2 (M.D. Fla. May 31, 2022) (disclosure is insufficient when it "fails to include [the witness'] specific opinions and the facts upon which he will base his opinions.").

Summers' brief assertion that three treating physicians may testify about "causa[tion]" is insufficient, particularly when the same

"boilerplate" language is used for all three experts without differentiation. *See Andrews*, 2021 WL 7452225, at *8; *Kondragunta*, 2013 WL 1189493, at *8 ("conclusory hint of the anticipated testimony" of treating physicians is insufficient). *Compare Brackett*, 2022 WL 2915659, at *2 (disclosure describing testimony regarding, *inter alia*, "the cause and the extent of damage to the insured property arising from of the loss" is insufficient under Fed. R. Civ. P. 26(a)(2)(C)), *with Jaworek*, 2020 WL 3425116, at *2-3 (disclosure describing, *e.g.*, "retinal breaks in the collision, necessitating retinal detachment surgery" and expected testimony that "the collision caused 'permanent bilateral sensorineural hearing loss and tinnitus' " is "just barely" sufficient under Fed. R. Civ. P. 26(a)(2)(C)).[2]

Summers' failure to comply with Rule 26 does not necessarily foreclose her use of the treating physicians' causation testimony. Rule

---

[2] Summers defends the disclosures as sufficient under Rule 26(a)(2)(C) by noting that her "medical records contain the [treating] physicians' findings and assertions that the injuries [they were treating] were caused by the subject collision[.]" Doc. 45 at 4. As the *Kondragunta* Court explained, however, "the fact that plaintiff provided all his medical records to the defendants does not mean that plaintiff has fulfilled the 'summary of the facts and opinions' prong of Rule 26(a)(2)(C). Allowing medical records to be submitted in lieu of a summary would invite a party to dump voluminous medical records on the opposing party, contrary to the rule's attempt to extract a 'summary.' " *Kondragunta*, 2013 WL 1189493, at *6 (footnote, citations, and quotations omitted).

37(c) provides that exclusion of undisclosed or inadequately disclosed evidence is not required if the defective disclosure "was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Summers does not argue that her insufficient disclosures were "justified", *see generally* doc. 45; rather, she contends that they were "harmless."  *Id.* at 5-9.  Courts weigh five factors when considering whether an insufficient disclosure is harmless:

> (1)  the surprise to the party against whom the evidence would be offered;
> (2)  the ability of that party to cure the surprise;
> (3)  the extent to which allowing the evidence would disrupt the trial;
> (4) the importance of the evidence; and
> (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*See Rangel v. Anderson*, 202 F. Supp. 3d 1361, 1366 (S.D. Ga. 2016) (citing *Cambridge Univ. Press v. Becker*, 2010 WL 6067575, at *3 (N.D. Ga. Sept. 21, 2010)); *see also  Abdulla v. Klosinki*, 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012) ("The district court has broad discretion in determining whether a violation is justified or harmless." (quotation and citation omitted)).

This Court has recognized that the first and second factors weigh particularly heavily against a motion to exclude pursuant to Rule 37(c)(1)

where, as here, Carasas made no attempt to obtain additional information regarding the treating physicians' causation testimony.  *See* doc. 47 at 8 (complaining that Summers did not provide "one iota of specificity" regarding the causation testimony without indicating that he ever complained about the disclosures until filing the Causation Motion); *Borkowski v. Wal-Mart Stores E., LP*, 2021 WL 3485442, at *4 (S.D. Ga. Mar. 23, 2021) (quoting *Kondragunta*, 2013 WL 1189493 at * 8) ("[A] party who 'had the ability to complain' had the ability to cure any surprise caused by insufficient disclosures."); *Castle-Foster v. Cintas Corp. No. 2*, 2021 WL 601877, at *11 (S.D. Ga. Feb. 16, 2021) ("Even if these disclosures had been inadequate, defendants could not justifiably claim the necessary surprise to exclude them. . . . [C]hallenging these disclosures at this juncture smacks of sandbagging.").  Absent any description of Carasas' "efforts . . . to remedy perceived defects" in the disclosures, the first and second factors militate in favor of harmlessness. *Landivar v. Celebrity Cruises, Inc.*, 340 F.R.D. 192, 196 (S.D. Fla. 2022); *see also Kondragunta*, 2013 WL 1189493, at *8 ("Defendants . . . laid in wait, hoping that plaintiff's non-compliance would doom his ability to offer . . . expert testimony.").

Carasas attempts to analogize this case to three cases in which the Court excluded expert testimony for a party's insufficient Rule 26(a)(2) disclosures: *Rangel v. Anderson*, 202 F. Supp. 3d 1361 (S.D. Ga. 2016), *Kraese v. Jialiang Qi*, 2021 WL 640826 (S.D. Ga. Feb. 18, 2021), and *Martin v. Wal-Mart Stores East, LP.*, 2020 WL 5949222, (S.D. Ga. Oct. 7, 2020). *See* doc. 38 at 15 ("[Carasas] is also caught in the same position enumerated by the Court in [*Kraese*] . . . and [*Martin*.]"); doc. 47 at 4 ("Allowing Plaintiff to cure [her disclosure] failure at this juncture would be equivalent to the situation contemplated in *Rangel*[.]"). The analogies, however, are not persuasive.

In *Rangel* and *Kraese*, the parties challenging witnesses on inadequate disclosure grounds actually deposed the experts at issue before seeking exclusion of their testimony. *See Rangel*, 202 F. Supp. 3d at 1365; *Kraese*, 2021 WL 640826, at *1. Further, in *Rangel*, the plaintiff "had not provided *any* disclosure regarding [the treating physician] and, thus, had not even *hinted* that [he] would testify about anything other than the facts regarding his treatment of Plaintiff." 202 F. Supp. 3d at 1367 (emphasis added); *see also id.* ("Plaintiff's counsel . . . only realized that [the treating physician] could act as a causation expert at the

10

deposition").  Similarly, in *Kraese*, the plaintiff only disclosed that the treating physician was a "person[ ] likely to have discoverable information" and that the plaintiff "may call on [her] physicians for expert opinions concerning Plaintiff's rendered treatment."  2021 WL 640826, at *5.[3]  The Court is unpersuaded by Carasas' analogies because Summers' disclosure, although deficient, indicated the possibility that her treating physicians would offer causation opinions.

This case is also distinct from *Martin*.  There, even after the deficiency in plaintiff's disclosure was "brought to [her] attention", she acknowledged that her treating physician required a Rule 26 disclosure and "failed to even attempt to provide a proper [one]."  *Martin*, 2020 WL 5949222, at *4.  Here, although Summers' disclosures were insufficient under Rule 26(a)(2)(C), Carasas did not raise that deficiency until he filed the Causation Motion, and Summers has never conceded that her disclosure was deficient.  *See, e.g.*, doc. 45 at 3.  This case is more analogous to *Borkowski*, where the deficiencies in the plaintiff's disclosures were evident when they were served, and "Defendant

---

[3]  Additionally, the Court in *Kraese* explained that the plaintiff had already been denied leave to file untimely expert disclosures, which weighed against a finding of "harmlessness."  2021 WL 640826, at *6.

apparently took no action on that knowledge until after the deposition deadline had passed and less than fourteen days remained before the *Daubert* deadline." 2021 WL 3485442, at *4.

The remaining factors are more ambivalent, but still do not balance against harmlessness. The third factor weighs in favor of harmlessness because "there is no trial set in this case", *Borkowski*, 2021 WL 3485442, at *5, and the parties have not filed any dispositive motions which would be impacted by additional discovery regarding the treating physicians, *see Kroll v. Carnival Corp.*, 2020 WL 4926423, at *6 (S.D. Fla. Aug. 20, 2020). As to the fourth factor, the Court recognizes that causation testimony, in general, is "important" to Summers' tort claim. However, it is impossible for the Court to determine the specific importance of the treating physicians' causation testimony in this case given Summers' terse disclosure, and since she plans to offer causation testimony from another expert. *See, e.g.*, doc. 38-4 at 9 (Mahan's report discusses causation); *Borkowski*, 2021 WL 3485442, at *5 ("As to the fourth [factor], the parties have not fully explained the precise significance of the treating physicians' causation testimony. . . . That factor, then, is equivocal."). Finally, Summers' assertion that her insufficient disclosure

was "an honest and minor mistake" does not show that the fifth factor weighs in her favor.  Doc. 45 at 9.

In sum, the Court finds that the factors balance in favor of a finding of harmlessness, particularly since Carasas does not explain why he did not raise the issue until filing the Causation Motion.  *See Landivar*, 340 F.R.D. at 196 ("[I]f an issue about a party's disclosure obligations arises, the parties must work to resolve it before seeking the severe sanction of excluding an expert's testimony.  . . .  The Court will not impose the draconian sanction of excluding testimony from Plaintiff's only expert when Defendant made no attempt to resolve the issue by more measured means." (quotations and citations omitted)).[4]

---

[4]  Carasas also appears to raise a *Daubert* challenge to the treating physicians' causation testimony.  *See* doc. 38 at 5-10.  He argues that they need to perform a "differential etiology" to render causation opinions in this case, *id.* at 6, and that it would be impossible for Summers to show that they reliably conducted that analysis given her brief expert disclosure.  *Id.* at 9.  Absent any specific detail regarding the treating physicians' potential testimony, "the Court does not have sufficient evidence to perform [*Daubert*'s] gatekeeping task." *Yeager v. Buxton*, 2018 WL 4620884, at *5 (D. Kan. Sept. 26, 2018) (quotations omitted) ("[The *Daubert* challengers] have not proffered testimony from either witness.  The Court surmises this is because [they] did not depose either witness.  The Court has not even seen the relevant medical records generated by the witnesses.  The Court has simply been provided [the] expert designation of the two witnesses.").  Carasas remains free to assert a *Daubert* challenge to the treating physicians during the reopened motions period, discussed below.

"Neither party's behavior in this case has been exemplary." *Whitmore v. Fed. Express Corp.*, 2017 WL 11537385, at *2 (S.D. Fla. Jan. 5, 2017). However, given the Court's determination that Summers' insufficient disclosures were "harmless," the Court will follow the "balance of authority" and afford Summers an opportunity to submit a disclosure compliant with Rule 26(a)(2)(C), and permit the parties to conduct additional (but limited) discovery. *Borkowski*, 2021 WL 3485442, at *5; *see Torres v. Wal-Mart Stores E., L.P.*, 555 F. Supp. 3d 1276, 1301 (S.D. Fla. 2021); *see also* Fed, R. Civ. P. 26(e).

Summers is **DIRECTED** to serve a supplemental disclosure regarding the treating physicians on Carasas no later than 7 days from the date of this Order. No later than 14 days from the date of this Order, the parties are **DIRECTED** to confer and file a joint status report proposing the deadlines for and scope of the reopened discovery period. The parties must also propose deadlines for and the scope of motions following the reopened discovery period. To the extent the parties are unable to agree on any of the content in the joint status report, they must explain their disagreement and alternative proposals in the report. If the parties are unable to agree, their joint status report should also include

proposed dates and times for a status conference, if the Court concludes such a conference is necessary.

III.   *Carasas' motion to exclude the testimony of Summers' expert Robert Tremp is denied.  Doc. 39.*

Summers seeks to introduce the testimony of Robert Tremp, a life care planning expert, regarding "the anticipated, future medical care that [Summers] may need . . . ." Doc. 44 at 2; *see also* doc. 39-5 at 12-28 (Tremp CV and report).[5]  Carasas argues that Tremp is not qualified, his methodology is not reliable, and his opinions would not help the trier of fact.  *See* doc. 39 at 10-15.

Federal Rule of Evidence 702 compels the Court to perform a "gatekeeping" function concerning the admissibility of expert scientific evidence.  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 n.7, 597

---

[5]  Specifically, Tremp offers opinions on Summers' need for and the cost of orthopedic office visits, epidural steroid injections, physical therapy, diagnostic MRI, diagnostic X-ray, pain management visits, medications, homemaker services, mental health services, and case management services.  Doc. 39-5 at 28.

(1993)).  In performing this task, the Court must consider whether the party offering the evidence has shown:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998)).  The proponent of the expert opinion bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence.  *Daubert*, 509 U.S. at 592 n.10; *Kawas v. Spies*, 2022 WL 2055281, at *3 (S.D. Ga. June 7, 2022).

Under the first prong, "experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Frazier*, 387 F.3d at 1260–61; *see also* Fed. R. Evid. 702 (a witness may be qualified as an expert by "knowledge, skill, experience, training, or education[.]").  But, "[w]hen an expert witness relies mainly on experience to show he is qualified to testify, 'the witness must explain how that experience leads to the conclusion reached, why that experience

16

is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.' " *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 942-43 (11th Cir. 2015.) (quoting *Frazier*, 387 F.3d at 1261).

As to the second prong, the reliability "criterion remains a discrete, independent, and important requirement for admissibility." *Frazier*, 387 F.3d at 1261. "The Supreme Court in *Daubert* set out a list of 'general observations' for determining whether expert testimony is sufficiently reliable to be admitted under Rule 702." *United States v. Brown*, 415 F.3d 1257, 1267 (11th Cir. 2005) (citation omitted). These factors, or observations, inquire into the expert's "theory or technique" and are: "(1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field." *Id.* (citation omitted). "Sometimes the specific *Daubert* factors will aid in determining reliability; sometimes other questions may be more useful." *Frazier*, 387 F.3d at 1262.

Expert testimony must also assist the trier of fact. *Frazier*, 387 F.3d at 1262. "By this requirement, expert testimony is admissible if it

concerns matters that are beyond the understanding of the average lay person." *Id.* (citation omitted). This inquiry is commonly called the "helpfulness" inquiry. *Prosper v. Martin*, 989 F.3d 1242, 1249 (11th Cir. 2021) (citing *Frazier*, 387 F.3d at 1260). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (quoting *Daubert*, 509 U.S. at 591).

Although Carasas' brief contains three separate headings challenging Tremp's testimony under each of *Daubert*'s prongs, doc. 39 at 11-15, he asserts a similar argument under each of those headings: Tremp, a life care planner without any medical qualifications, cannot opine about Summers' future needs absent physician recommendations regarding her future needs.[6]  Carasas broadly seeks to exclude *all* of

---

[6] *See, e.g.*, doc. 39 at 11 (arguing that Tremp is not qualified to provide his testimony because "he has produced a . . . chart listing Plaintiff's future medical care needs. A document that has not been validated by a single one of Plaintiff's treating physicians. [sic]"); *id.* at 11-12 (arguing that Tremp is not qualified by citing *Caldwell v. Teton Club Owners Ass'n., Inc.*, 2021 WL 2471291, at *3 (D. Wyo. Apr. 23, 2021), which excluded Tremp's testimony because he did not sufficiently rely on physicians' recommendations); *id.* at 12-13 (arguing that Tremp's methodology is not reliable because he is an "impermissible spokesman for Plaintiff's medical doctors when his assessment includes care, treatment, and other items that no doctor has prescribed or recommended. . . . Plaintiff's medical providers have not made recommendations as to her future care—therefore Tremp cannot rely upon this non-existent data."); *id.* at 14 (arguing that Tremp's testimony is not helpful because Tremp did not obtain "input or approval by Plaintiff's treating physicians" in creating his report).

Tremp's testimony on this basis. *See, e.g.*, *id.* at 11 (seeking exclusion of "the issues [Tremp] intends to address").

The Southern District of Texas has recently clarified the application of *Daubert*'s "qualifications" and "reliability" prongs to Tremp's life care planning testimony. In *Robinson v. Ethicon, Inc.*, the court distinguished between Tremp's opinions on future needs "requir[ing] approval or prescription from a medical doctor", and future needs that do not. 580 F. Supp. 3d 452, 460 (S.D. Tex. 2022). The Court explained that Tremp is qualified to testify about "items . . . that do not require approval of a medical doctor that fall within his area of expertise", even if a physician does not specifically recommend those items. *Id.*; *see also id.* at 458 (". . . Tremp is qualified to offer opinions in the areas in which Tremp specializes as a certified rehabilitation counselor and licensed therapist—including opinions about occupational therapy evaluations and sessions, psychological and therapy evaluations and psychotherapy sessions, equipment and supplies, and dietary bulking agents.").[7] Such

---

[7] *See also Burris v. Ethicon, Inc.*, 2021 WL 3190747, at *19 (N.D. Ohio July 28, 2021) ("Mr. Tremp's determination that Plaintiff may need a rehabilitation assessment, psychological evaluation, individual counseling, a scooter and rollator walker and various accessories, home safety items, incontinence supplies, a housekeeper, lawn care/maintenance assistance, and over-the-counter medication are within Mr.

opinions are reliable if Tremp "provide[s] the reasons for the recommendations that render them relevant to this case[.]" *Id.* at 458. Tremp is not, however, qualified to opine on future treatment requiring physician approval unless he "very specifically ground[s]" those opinions in a medical doctor's opinion. *Id.* at 459-60; *see also id.* at 460 ("Tremp may not testify that Robinson needs any treatments that would require approval or prescription from a medical doctor, but he may testify about those tests, medicines, and procedures would cost if a medical doctor were to recommend or prescribe them.").[8]

The Court concludes that Tremp is qualified to testify about Summers' need for at least *some* of the services listed in his report without a physician's specific recommendation. As Summers notes, "Tremp has been a certified life care planner for over 15 years, he has a

---

Tremp's areas of expertise as a Certified Life Care Planner, Certified Rehabilitation Counselor, and Licensed Associate Counselor.").

[8] *See also Smith v. Ethicon, Inc.*, 2021 WL 4098408, at *14 (E.D. Ky. Sept. 2, 2021) (". . . Tremp may not speak to the . . . cost of treatments not independently founded in proper medical opinion."); *Caldwell*, 2021 WL 2471291, at *3 (excluding Tremp's testimony related to "expected procedures which address medical problems caused by [plaintiff's injury]" because physician recommendations were not available to Tremp.). *Cf. Burris*, 2021 WL 3190747, at *20 ("Mr. Tremp's other opinions – regarding the need for evaluations by a pain management specialist, primary care physician, physical therapist, urogynecologist, and urologist, are sufficiently based in[, *inter alia*,] Dr. Galloway's (admittedly broad) opinion that Plaintiff will require lifetime medical care[.]").

Master's Degree in Special Education and Rehabilitation Counseling, and has received continued education in the field of life care planning." Doc. 44 at 4; *see also* doc. 39-5 at 12-15 (Tremp CV).  Carasas does not explain why these qualifications are insufficient for Tremp to opine on Summers' need for some general services, *e.g.*, "Homemaker Services" and "Case Management Services," absent a physician's recommendation. Doc. 39-5 at 28.

Carasas also premises his "reliability" challenge on the absence of physician recommendations regarding Summers' future care.  *See, e.g.*, doc. 39 at 13 ("Plaintiff's medical providers have not made recommendations as to her future care—therefore Tremp cannot rely upon this non-existent data.").  As discussed, however, Tremp is only required to base a future-need opinion on a specific physician recommendation if the need "require[s] approval or prescription from a medical doctor."  *Robinson*, 580 F. Supp. 3d at 460.  Carasas does not attempt to distinguish between Tremp's listed future needs requiring physician recommendation and those do not, and the Court declines to

construct an argument for him.[9]  *See Burris*, 2021 WL 3190747, at \*19

("Defendants argue broadly that '[b]ecause no doctor has opined that the

services and items in Mr. Tremp's Life Care Plan are medically

necessary, his Life Care Plan and related opinions should be excluded as

unreliable.' . . . However, . . . Defendants have not offered specific

arguments regarding each item in the Life Care Plan and why it requires

a 'medical necessity' determination."); *see also Hannah v. Armor Corr.*

*Health Servs., Inc.*, 2021 WL 1777881, at \*6 (M.D. Fla. Mar. 8, 2021)

("The Court is mindful that the exclusion of expert testimony is an

*exception*, not the rule, for evidentiary admissions under *Daubert*, *Kumho*

*Tire*, and the Federal Rules of Evidence. . . . Moreover, the Court need

---

[9] Tremp confirmed at his deposition that, although he was able to opine on the cost of certain future treatments and services (*e.g.*, orthopedic office visits, epidural steroid injections, and physical therapy), he is unable to opine that those treatments and services were appropriate, without a physician's recommendation.  *See* doc. 39-7 at 12-14.  He explained that absent physician recommendations, those opinions are "just projection[s.]"  *Id.* at 13.  Tremp's report, however, opines on at least 10 categories of future care, *see* doc. 39-5 at 28, and Carasas does not attempt to explain which of each those categories, including categories on general services like "mental health" and "case management" require an underlying physician recommendation. *See* doc. 39 at 16 (generally seeking exclusion of Tremp's "Life Care Plan, opinions, and testimony"); *see also, e.g.*, doc. 39-7 at 16 (Tremp testified that he based his "mental health" opinions on, *inter alia*, consultation with a licensed marriage and family therapist).

not develop . . . conclusory arguments or address arguments unsupported by authority.") (emphasis in original) (citations omitted).[10]

Further, Summers argues that Tremp reliably based his future-need opinions on an interview with Summers, and a review of "narrative materials" from her treating physician and her medical records.  Doc. 44 at 6.  Carasas does not point to any deficiency in those sources, *see generally* doc. 39;[11] as discussed, he bases his argument on the need for physician recommendation for all of Tremp's recommended future needs.  Accordingly, the Court will not grant Carasas' request for a blanket exclusion on Tremp's testimony on reliability grounds.   *See Green v. Polyester Fibers, LLC*, 2015 WL 6158813, at *2 (N.D. Miss. Oct. 20, 2015)

---

[10]  *See also Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)) ("To trigger a *Daubert* inquiry, an expert's testimony, or its 'factual basis, data, principles, methods, or their application,' must be 'called sufficiently into question.' "); *United States v. McCluskey*, 954 F. Supp. 2d 1224, 1270 (D.N.M. 2013) ("Since Defendant fails to cite specific, persuasive authority for most of these bases [for exclusion], however, and the Court need not develop Defendant's conclusory arguments or address arguments unsupported by authority, the Court declines to address most of these points.").

[11]  The closest Carasas comes to challenging the sufficiency of the medical records as a basis for Tremp's opinions is in the "Statement of Facts" section of the Tremp Motion: "Plaintiff's medical records Tremp reviewed in order to prepare the Life Care Plan only describe medical treatment up to January 29, 2020, meaning that per the records that were reviewed, Plaintiff had not been treating for over a year prior to the date of the Life Care Plan, yet Tremp somehow still managed to opine that the Plaintiff needed ongoing medical treatment for five years into the future."  Doc. 39 at 3.  To the extent Carasas contends that the age of the records weakens Tremp's opinions, he may raise the issue on cross examination.

(permitting life care planning testimony based on "a personal interview with the subject of the life care plan" and "a thorough review of [Plaintiff's] medical records" when there has been "no testimony or record by any physician about [Plaintiff's] future medical needs").

Carasas also challenges the helpfulness of Tremp's testimony. Doc. 39 at 14 ("Tremp's testimony will not assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." (quotations omitted)). The portion of the Tremp Motion purporting to address "helpfulness", however, is a reassertion of Carasas' "qualifications" and "reliability" arguments discussed above:

> There simply is no way to cross-examine or test how Tremp leapt from having a telephone call with Plaintiff and reviewing a portion of her medical records to a $215,000 plus Life Care Plan (or "cost projection"). It all comes from Tremp, who is self admittedly not qualified to diagnose, prescribe medicines, or refer Plaintiff for further medical or psychological treatment. Here, there has been no testing, no verification, no objective data. There has not been any input or approval by Plaintiff's treating physicians. Tremp's self-admitted cost projection not based on any medical foundation is not appropriate, will not assist the trier of fact, and will only confuse the jury. . . . [A]llowing an unqualified "spokesman" like Tremp to simultaneously on the one hand distill unverified medical evidence in this case into a chart and on the other simultaneously go beyond that evidence would make

> a mockery of the expert witness rules and irrevocably
> prejudice Defendant's defense of this case.

Doc. 39 at 14-15. As discussed, *Daubert*'s "helpfulness" inquiry relates to whether expert testimony concerns matters that are beyond the understanding of the average lay person", *Frazier*, 387 F.3d at 1262 (citation omitted), and whether it relates to an issue in the case, *Prosper*, 989 F.3d at 1249. Carasas' argument on helpfulness grounds is unavailing because it is related to Tremp's qualifications and the reliability of his opinions. *See Ward v. Carnival Corp.*, 2019 WL 1228063, at *6 (S.D. Fla. Mar. 14, 2019) ("[The] conclusory claim that the [expert's] testimony will not assist the trier of fact – set forth in a throwaway paragraph, without citation to a single legal authority supporting the argument – is likewise ineffective.").[12]

Finally, the "Statement of Facts" portion of the Tremp Motion suggests several purported deficiencies in Tremp's report without raising arguments regarding those deficiencies. *See, e.g.*, doc. 39 at 3 ("Plaintiff had not been treating for over a year prior to the date of the Life Care

---

[12]   Notwithstanding the Court's conclusion that Tremp is not precluded from testifying, the Court draws no firm conclusion on the admissibility of the entirety of that testimony. To the extent that Carasas believes that particular opinions are inadmissible, he remains free to seek to exclude those opinions through a motion *in limine*.

Plan, yet Tremp somehow still managed to opine that the Plaintiff needed ongoing medical treatment for five years into the future. [sic]"); *id.* at 4 ("Being that Plaintiff was 39 at the time the Life Care Plan was prepared and that Tremp only estimated she would need future care until the age of 44, it is almost impossible to reconcile why she would require these 'services' starting at the age of 65 (and how they would be related to the accident), when per his very own recommendation she would not have required any treatment arising from the accident for the past 21."); *id.* at 6 (listing various sources Tremp did not consider in forming his report without argument); *id.* ("Tremp testified that the epidural steroid injections and imaging (x-rays and MRIs) portions of the cost projections . . . were based on 'The Physicians Fee Reference' he could not opine how these amounts were computed[.] [sic]").  Again, the Court declines to construct a *Daubert* challenge for Carasas based on these assertions in his Statement of Facts.  To the extent he questions, *e.g.*, Tremp's determination of Summers' medical needs for 5 years, her need for services at the age of 65, whether Tremp should have considered

additional sources, and Tremp's calculation of costs, he may raise those issues on cross examination.[13]

IV.    *Conclusion*

For the foregoing reasons, the Causation Motion is **DENIED**, doc. 38, the Mahan Motion is **GRANTED**, doc. 37, and the Tremp Motion is **DENIED**, doc. 39.  Summers is **DIRECTED** to serve a supplemental disclosure regarding the treating physicians on Carasas no later than 7 days from the date of this Order.  No later than 14 days from the date of this Order, the parties are **DIRECTED** to confer and file a joint status report proposing the deadlines for and scope of the reopened discovery period.  The parties must also propose deadlines for and the scope of motions following the reopened discovery period.  To the extent the parties are unable to agree on any of the content in the joint status report, they must explain their disagreement and alternative proposals in the report.  If the parties are unable to agree, their joint status report should

---

[13] Carasas asserts that if the Court excludes Tremp's testimony, it should also exclude the testimony of Plaintiff's consulting economist Nik Volkov.  Doc. 39 at 16 (explaining that Volkov's opinions are "only related" to assessing Tremp's life care plan).  Since the Tremp Motion is denied, Carasas' request for exclusion of Volkov's testimony is **DENIED as moot**.  Doc. 39.

also include proposed dates and times for a status conference, if the Court

concludes such a conference is necessary.

**SO ORDERED**, this 20th day of September, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA